518

**Commonwealth v. Mendez**

C.P. of Berks County, no. CP-06-CR-1088-2005.

*Kevin F. Howard, assistant district attorney,* trial counsel for Commonwealth.

*John T. Adams, district attorney,* and *Kelly Kline, assistant district attorney,* PCRA counsel for Commonwealth.

*Robert J. Kirwan II,* trial and appellate counsel for defendant.

*Allen Daringer,* PCRA counsel for defendant.

STALLONE, *J.,* January 15, 2009—This matter is presently before this court pursuant to an amended petition for relief under the Post Conviction Relief Act filed by the defendant, Luis Jorge Mendez.

On August 26, 2005, a jury found the defendant guilty on a total of 11 charges consisting of aggravated assault manifesting extreme indifference to the value of human life,[1] aggravated assault causing bodily injury with a deadly weapon,[2] recklessly endangering another person,[3] firearms not to be carried without a license[4] and possessing instruments of crime,[5] arising out of the shootings of Emmanuel Sanchez, Christopher Rodriguez, Amado Rodriguez and Marcus Espada,[6] which took place on

---

1. Title 18, 18 Pa.C.S. §2702(a)(1) (Supp. 2008).
2. Title 18, 18 Pa.C.S. §2702(a)(4) (Supp. 2008).
3. Title 18, 18 Pa.C.S. §2705 (Supp. 2008).
4. Title 18, 18 Pa.C.S. §6106(a)(1) (Supp. 2008).
5. Title 18, 18 Pa.C.S. §907(a) (Supp. 2008).
6. The convictions, as they relate to each of the four victims, were as follows:

A. *As to Emmanuel Sanchez:*

Count 4 aggravated assault manifesting extreme indifference to the value of human life;

Count 8 aggravated assault causing bodily injury with a deadly weapon;

Count 12, recklessly endangering another person;

B. *As to Christopher Rodriguez:*

Count 9 aggravated assault causing bodily injury with a deadly weapon;

Count 13 recklessly endangering another person;

December 8, 2004, at 303 North 9th Street in the City of Reading.[7] Emmanuel Sanchez died as a result of the shooting, while the other three victims survived. On October 17, 2005, this court sentenced the defendant to a cumulative period of 10 to 20 years imprisonment in a state correctional facility.[8] He was represented at trial

C. *As to Amado Rodriguez:*

Count 10 aggravated assault causing bodily injury with a deadly weapon;

Count 14 recklessly endangering another person;

D. *As to Marcus Espada:*

Count 11 aggravated assault causing bodily injury with a deadly weapon; and

Count 15 recklessly endangering another person.

And as related to all four victims, the jury also found the defendant guilty of Count 16, firearms not to be carried without a license, and Count 18, possessing instruments of crime.

7. However, the jury acquitted him of the following charges:

Count 2 murder of the first degree—18 Pa.C.S. §2502(a);

Count 3 murder of the third degree—18 Pa.C.S. §2502(c);

Count 5 aggravated assault—18 Pa.C.S. §2702(a)(1);

Count 6 aggravated assault—18 Pa.C.S. §2702(a)(1);

Count 7 aggravated assault—18 Pa.C.S. §2702(a)(1);

Count 17 discharge of a firearm into an occupied structure—18 Pa.C.S. §2707.1(a); and

Count 19 possessing instruments of crime (concealed upon the person)—18 Pa.C.S. §907(b).

8. The individual sentences imposed were: five years and two months to 10 years and four months on Count 4, aggravated assault; one to two years on Count 8, aggravated assault, consecutive to the sentence imposed on Count 4; one to two years on Count 9, aggravated assault, consecutive to the sentence imposed on Count 8; one to two years on Count 10, aggravated assault, consecutive to the sentence imposed on Count 9; one to two years on Count 11, aggravated assault, consecutive to the sentence imposed on Count 10; nine months to 24 months on Count 16, firearms not to be carried without a license, consecutive to the sentence imposed on Count 11; and one month to 24 months on Count 18, possessing instruments of crime, consecutive to the sentence imposed on Count 16.

and at sentencing by Robert J. Kirwan II, Esquire, whom this court had previously appointed to represent the defendant.

Thereafter, the defendant filed a post-sentence motion with this court in the form of a motion for judgment of acquittal or, in the alternative, a new trial, which we denied. This prompted him to file a direct appeal to the Superior Court of Pennsylvania, in which he was also represented by Attorney Kirwan who raised a total of four issues for appellate review, including that:

"He was entitled to a new trial on the basis that he was denied his right to a fair trial based upon the following question posed to him by Assistant District Attorney Howard, on re-cross-examination:

"By Mr. Howard:

"Q. So this is the first time you're telling us what happened?" [9]

In the memorandum opinion in support of our judgment of sentence dated August 2, 2006, this court concluded that this issue was waived for purposes of direct appeal since the defendant had failed to make a request either for a mistrial and/or curative instruction. The Superior Court affirmed the judgment of sentence and said at page 7 of its February 21, 2007 memorandum opinion that:

"In its Pa.R.A.P. 1925(a) opinion, the trial court concluded that this issue was waived since the appellant

---

9. See the defendant's concise statement of matters complained of on appeal, filed May 15, 2006.

chose not to request a mistrial or jury instruction after conferring with his attorney. See trial court opinion 8/2/06 at 9-10. The trial court's determination was accurate, as failure to request a mistrial or curative instruction under these circumstances results in a waiver on appeal. See *Commonwealth v. Bell,* 386 Pa. Super. 164, 562 A.2d 849 (1989) (failure to request mistrial when a prejudicial event occurs results in a waiver). See also, *Commonwealth v. Brown,* 467 Pa. 512, 359 A.2d 393 (1976) (claim linked to improper statement by prosecutor was waived where trial court sustained defense counsel's objection to prosecutor's statement, but counsel subsequently failed to request mistrial or curative instruction). Hence, we will not address this issue further."

Thereafter, the defendant filed a petition for allowance of appeal with the Supreme Court of Pennsylvania, in which he argued that this question asked of the defendant, in the form posed by Assistant District Attorney Howard, constituted prosecutorial misconduct, and as such, should be determined to be an exception to the waiver rule. However, the Supreme Court declined to hear the issue by denying his petition.

On September 11, 2007, the defendant filed a motion for recusal of this court from all further proceedings in this case, which we dismissed without prejudice since there was no matter pending in this case at that time. The defendant then filed his first petition for relief under the Post Conviction Relief Act, along with a second motion for recusal, on December 3, 2007. Upon being advised of both filings, this court appointed Allen Daringer, Esquire to represent him.

In the interest of judicial economy, a hearing was first held by this court on the defendant's second motion for recusal, which we denied. Thereafter, and with the continued assistance of Attorney Daringer, the defendant filed an amended first petition for relief under the Post Conviction Relief Act. In that petition, he is asking this court to grant him a new trial based upon alleged ineffective assistance on the part of Attorney Kirwan. Alternatively, he is asking this court to resentence him on the basis that, having been sentenced on Count 4, aggravated assault manifesting extreme indifference to the value of human life, as to Emmanuel Sanchez, he could not also be sentenced on Count 8, aggravated assault causing bodily injury with a deadly weapon, also as to Emmanuel Sanchez, since both offenses arise under the same statute, that being section 2702 of the Crimes Code.

Having now held an evidentiary hearing on the defendant's amended first petition for relief under the Post Conviction Relief Act,[10] we now file this opinion in which we conclude, for the following reasons, that the defendant is entitled to post-conviction relief in the form of a new trial.

Beginning with his claim of ineffective assistance on the part of Attorney Kirwan, we note that there is a rebuttable presumption that counsel's stewardship is effective. In order to overcome that presumption, a post-conviction petitioner must prove each of the following three ele-

---

10. At this point, we note that the defendant withdrew his remaining claims, with prejudice, at the hearing. See N.T., PCRA hearing, pp. 74-78.

ments: (1) that his underlying claim has *arguable merit*;[11] (2) that counsel had *no reasonable basis* for his action or inaction; and (3) that he sustained *prejudice* as a result of the alleged ineffective assistance of counsel. *Commonwealth v. Rainey,* 593 Pa. 67, 928 A.2d 215 (2007). A failure to prove any one of these three elements would have ended this court's inquiry. *Id.*

Specifically, the defendant claims that Attorney Kirwan was ineffective in failing to request a mistrial and/or a curative instruction from this court in response to the question posed by Assistant District Attorney Howard, as more fully set forth earlier in this opinion.[12] He argues that Assistant District Attorney Howard's question constituted an improper comment upon his "post-arrest" silence, in violation of his constitutional rights and, therefore, his claim of ineffective assistance on the part of Attorney Kirwan has arguable merit; that Attorney Kirwan had no reasonable basis for failing to make either of those requests to this court, as it resulted in the waiver of this issue for purposes of the defendant's direct appeal; and that Attorney Kirwan's ineffectiveness resulted in prejudice to the defendant, by virtue of its impact on the jury's assessment of his believability and, therefore, the jury's verdicts.

In response, the Commonwealth contends that this issue does not have any arguable merit because the focus

---

11. All language which appears in italic type or is otherwise highlighted in this opinion is for emphasis only.

12. The proceedings which followed relative to this matter at trial are set forth in detail at pages 8-9 of our memorandum opinion dated August 2, 2006, and are incorporated by reference as though the same were fully set forth herein.

of Assistant District Attorney Howard's question was not on the defendant's "post-arrest" silence but, instead, on his "pre-arrest" silence; that there was a reasonable basis for Attorney Kirwan's decision to not request a mistrial and/or curative instruction, in view of his own testimony at the PCRA hearing that he advised the defendant to not make either request because the case was "going well" [13] and that, in the event of a new trial, the Commonwealth would have a transcript of the defendant's prior testimony to use against him,[14] and that the defendant did not suffer any prejudice, in view of his acquittal on the more serious charges of first-degree murder and third-degree murder.[15]

With the foregoing in mind, we must first determine whether the defendant's ineffective assistance claim has any arguable merit. In doing so, we look to the case of *Commonwealth v. Mitchell,* 576 Pa. 258, 839 A.2d 202 (2003), which we believe is directly on point with the action at bar. There, the defendant, Isaac Mitchell, was convicted of first-degree murder arising out of the shooting deaths of two individuals and was sentenced to death. At trial, he testified on his own behalf and, on direct examination, identified someone else as the shooter, as

---

13. N.T., PCRA hearing, p. 50.

14. N.T., PCRA hearing, pp. 48-50.

15. At this point, we note that the Commonwealth also makes a separate argument, relative to the curative instruction, that there is no arguable merit to that part of the defendant's ineffective assistance claim because, had Attorney Kirwan obtained a curative instruction from this court, there would have been no basis for relief on this issue on direct appeal. We do not clearly understand the logic of this argument and, therefore, we see no need to address it any further at this time.

did Luis Jorge Mendez in this case. On cross-examination, he was asked the following question by the assistant district attorney:

"Q. *Sir, isn't it correct that this is the first time since November ninth of 1997 that you ever told anybody publicly who killed your two cousins?*

"Mr. Lorusso [defense counsel]: Objection.

"The Court: Overruled."

On direct appeal, Mitchell claimed that this question, in the form posed by the prosecutor, infringed upon his constitutional right to remain silent. In agreeing with the defendant's argument, our Supreme Court reasoned as follows at page 214 of its opinion:

"In this case, most of the questions clearly went to appellant's pre-arrest actions at the time of the shooting or shortly thereafter. However, when the prosecutor asked the open-ended question, *'Sir, isn't it correct that this is the first time since November ninth of 1997 that you ever told anybody publicly who killed your two cousins?'* the time frame was ambiguous. The ambiguity of the question is inherent in the absence of a clear time reference, thus, raising an inference that the question anticipated an answer that would embrace appellant's actions from the moment of the shooting through the time of his arrest and up until the day of trial. *This is exactly the type of question that this court condemned in Clark, 533 Pa. 579, 583-84, 626 A.2d 154, 156 (1993)."*

Here, Assistant District Attorney Howard's question was almost "word-for-word" the same as the ones posed by the prosecutors in the *Mitchell* and *Clark* cases. As

with both *Mitchell* and *Clark,* the difficulty with Assistant District Attorney Howard's question is that the time frame to which it relates was ambiguous, since it was not posed with respect to any particular date or point in time. Therefore, it potentially covers the defendant's conduct from the moment of the shootings through the time of his arrest, up until the day of trial, which would constitute an inquiry not only into his "pre-arrest" silence, but also his "post-arrest" silence. For that reason, we conclude that the defendant's claim has arguable merit.

Next, we must decide whether Attorney Kirwan had any reasonable basis for not requesting a mistrial and/or a curative instruction. Certainly, there is no doubt that Attorney Kirwan was placed in a "catch-22" situation as to whether to take the chance of perhaps highlighting the issue further for the jury, impacting the defendant's credibility, by asking for a mistrial and/or curative instruction, or to simply "let the issue go." Notwithstanding that fact, and although he may have believed that the latter was the best course of action, the fact of the matter, however, is that his failure to make either request resulted in a waiver of the issue for purposes of the defendant's direct appeal, thereby preventing the defendant from presenting any argument on the merits of that issue to the Superior Court, in support of his request for a new trial. And so, we conclude, as Attorney Kirwan himself did at the PCRA hearing in response to a question posed by Assistant District Attorney Kline:[16]

"To make it clear, it was ineffective for me not to tell Mr. Mendez to ask for a curative instruction. If he asked

---

16. N.T., PCRA hearing, pp. 52-53.

for a curative instruction, the damage would have been there, but it would have been minimal, but preserved his right to argue that on appeal, that what Mr. Howard said denied him a fair trial. By not asking for a curative instruction, I clearly waived that issue before the Superior Court. We lost from that point forward. If I was effective, I would have said, take the curative instruction, breeze through it, write it out to the judge, make it simple so that no one pays attention to it, slip it in at the right moment, maybe not right then, but wait until after the jury instructions and do it then, but get the instruction on the record to preserve the issue.

"By not putting a curative instruction on the record, he didn't get his new trial on that basis. *The case law is extremely clear. If you hint at post-arrest silence, that's a basis for a new trial and borderline prosecutorial misconduct.* I didn't give him that opportunity. I don't enjoy sitting up here saying in open court that I didn't do my job correctly, but I'm not going to not say it just for ego purposes. *I did something wrong. If I did it wrong, I should say that to him.*" [17]

That brings us to the third and final element of prejudice. In order to demonstrate prejudice, the defendant must show that there is a reasonable probability that, but for Attorney Kirwan's alleged ineffective assistance, the outcome of the trial would have been different. *Commonwealth v. Sneed,* 587 Pa. 318, 899 A.2d 1067 (2006).

---

17. That is obviously what Attorney Kirwan, one of the best lawyers to ever appear in my courtroom did, and is the reason we are in the position to do justice today in this case.

The term "reasonable probability" has been defined as a *probability sufficient to undermine confidence in the outcome. Id.* Here, the defendant's credibility was the key issue in the case, given the fact that he was identified as the shooter by three of the Commonwealth's witnesses (Eliezar Carrasquillo, Jeffrey Rios and Carlos Rios), while the defendant testified that it was Carlos Rios who was the shooter. Based upon the verdicts, it appears that the jury concluded that it was the defendant who shot all four victims, but yet chose to find him not guilty of either first-degree murder or third-degree murder of Emmanuel Sanchez. This has all the earmarks of a compromise verdict, which leads this court to believe that the jury was probably influenced by Assistant District Attorney Howard's improper and highly prejudicial question. Had they not heard it, the jury might have been inclined to believe the defendant, as opposed to the Commonwealth's witnesses. However, it appears that the jury instead concluded that the defendant had a duty to tell the police what happened and that his failure to do so was somehow evidence of his guilt of the remaining counts, as was the situation in *Commonwealth v. Mitchell.* As a result, we have no choice but to conclude that the defendant suffered substantial prejudice as a result of Attorney Kirwan's failure to request a mistrial and/or a curative instruction.

With that being said, we need not reach the defendant's second and final claim concerning the legality of the sentence on Count 8 of the information that was imposed by this court.

And so, in accordance with the foregoing, we enter the following attached order:

## ORDER

And now, January 15, 2009, it is hereby ordered that the defendant's amended first petition for post-conviction relief under the petition for relief under the Post Conviction Relief Act is hereby granted.

Accordingly, the judgment of sentence is vacated and the defendant is granted a new trial as to Counts 4, 8, 9, 10, 11, 12, 13, 14, 15, 16 and 18 of the criminal information, which will be scheduled at the request of the district attorney of Berks County.